UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

FABIO GALARCE, individually and on behalf of
all others similarly situated,

   *Plaintiff*,

vs.

PARISON, INC.,

   *Defendant*.

_____/

CLASS ACTION

JURY TRIAL DEMANDED

# CLASS ACTION COMPLAINT

Plaintiff Fabio Galarce brings this class action against Defendant, Parison, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a class action under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. Defendant is an online retailer that sells cannabis-related paraphernalia and products.

3. To promote its goods and services, Defendant engages in aggressive telephonic sales calls to consumers without having secured prior express written consent as required under the FTSA.

4. Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy.

5. Through this action, Plaintiff seeks an injunction and statutory damages on behalf of himself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

6. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami, Florida.

7. Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of telephone number 305-***-1323 (the "1323 Number") that received Defendant's telephonic sales calls.

8. Defendant is, and at all times relevant hereto was, a Pennsylvania corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f). Defendant maintains its primary place of business and headquarters in Colorado Springs, Colorado. Defendant directs, markets, and provides business activities throughout the State of Florida and the United States.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the FTSA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for

federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

10. Defendant is subject to specific personal jurisdiction in Florida because this suit arises out of and relates to Defendant's significant contacts with this State. Defendant initiated and directed, or caused to be initiated and directed, calls into Florida in violation of the FSTA. Specifically, Defendant initiated and directed, or caused to be initiated and directed, the transmission of calls into Florida. Plaintiff's claims for violation of the FTSA against Defendant, and the resulting injuries caused to Plaintiff by Defendant's calls, which includes the invasion of Plaintiff's privacy, arose in substantial part from Defendant's direction of those messages into Florida.

11. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## FACTS

12. Over the past several months preceding the filing of this action, Defendant began bombarding Plaintiff with telephonic sales call to Plaintiff's cellular telephone number including but not limited to the following on April 8, 2022:



13. As demonstrated by the above screenshot, the purpose of Defendant's telephonic sales calls was to solicit the sale of consumer goods and/or services. The messages contained language such as "Order by 4/11 to receive just in time! Save 30% with code: "30-April"."

14. Defendant's calls were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

15. Defendant's calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff cannabis-related paraphernalia.

16. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

17. To constitute valid consent under Florida law, the called party must, inter alia, "[c]learly authorize[] the person making or allowing the placement of a telephonic sales call" to place such call "using an automated system for the selection or dialing of telephone numbers[.]" Fla. Stat. § 501.059(1)(g).

18. Upon information and belief, Defendant caused similar telephonic sales calls to be sent to individuals residing in Florida and throughout the United States.

19. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

20. Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

21. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

22. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

23. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

24. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

25. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

26. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

27. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

28. Compliance with the FTSA will not result in Defendant having to cease its business operations.

29. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

30. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

31. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

32. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

33. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

34. Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

35. More specifically, Plaintiffs never signed any type of authorization permitting or allowing the placement of telephonic sales calls by text message using an automated system for the selection and dialing of telephone numbers.

36. Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

37. The text messages originated from telephone number 1-833-445-0939, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

38. Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and wasted time.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

39. Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" that Plaintiff seeks to represent is defined as:

> **All persons in Florida who (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, within the time period of four years prior to the filing of the original Complaint through the date on which an Order granting class certification is entered.**

40. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the exact number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

41. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers via an automated dialer without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

42. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

43. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

[i] Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

[ii] Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

[iii] Whether Defendant utilized an automated system for the dialing or selection of numbers to be called;

[iv] Whether Defendant's conduct was knowing and willful; and

[v] Whether Defendant is liable for damages, and the amount of such damages.

44. The common questions in this case are capable of common answers. If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

45. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories and Plaintiff is not subject to unique affirmative defenses that threaten to dominate the litigation.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

46. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class. The undersigned are experienced class action litigators, including in the specific context of the FTSA, and neither Plaintiff nor the undersigned have any interests in conflict with those of the putative Class.

### SUPERIORITY AND PREDOMINANCE

47. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small (at most $1,500.00) to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

48. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

49. Moreover, the previously articulated common questions predominate over individual questions. Defendant used the same automated system to send materially identical telemarketing messages to all members of the putative Class. Whether the fact that Class members provided information into a generic data harvesting lead generator constitutes valid consent within the meaning of the FTSA is a question the answer to which is equally applicable to all members of the Class. As such, there are no material individual questions at all—but even if there were, they certainly do not predominate over the common questions.

## COUNT I
## VIOLATION OF FLA. STAT. § 501.059
### (On Behalf of Plaintiff and the Putative Class)

50. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

51. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

52. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will

or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

53. "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

54. Defendant failed to secure prior express written consent within the meaning of the FTSA from Plaintiff and the Class members.

55. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without their prior express written consent.

11

56. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

57. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class, including treble damages;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without valid consent under the FTSA, and to otherwise protect the interests of the Class;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Dated: July 11, 2022                                    Respectfully submitted,

**SHAMIS & GENTILE P.A.**
/s/ Andrew Shamis
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
/s/ Garrett Berg
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg
Florida Bar No. 0100537
scott@edelsberglaw.com
Christopher Gold
chris@edelsberglaw.com
Florida Bar No. 088733
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915